*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 14a0080p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,

               *Plaintiff-Appellee*,

     *v.*

BRYON TAYLOR,

               *Defendant-Appellant.*

No. 12-3730

> Appeal from the United States District Court
> for the Northern District of Ohio at Youngstown.
> No. 4:03-cr-00422-1—Donald C. Nugent, District Judge.

Argued: June 11, 2013

Decided and Filed: April 18, 2014

Before: BOGGS and DONALD, Circuit Judges; and STAMP, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Jeffrey B Lazarus, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Cleveland, Ohio, for Appellant. Ian D. Hoffman, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee. **ON BRIEF:** Jeffrey B Lazarus, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Cleveland, Ohio, for Appellant. Ian D. Hoffman, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

     BOGGS, J., delivered the opinion of the court, in which STAMP, D.J., joined. DONALD, J. (pp. 9–19), delivered a separate dissenting opinion.

---

[*] The Honorable Frederick P. Stamp, Jr., United States District Judge for the Northern District of West Virginia, sitting by designation.

1

—————————

## OPINION

—————————

BOGGS, Circuit Judge.  In 2004, defendant-appellant Bryon Taylor pled guilty to conspiracy to distribute and to possess, with intent to distribute, 392.2 grams of cocaine base (crack cocaine), in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846.  Although Taylor was subject to a 240-month statutory minimum penalty, the government moved for a downward departure based on substantial assistance, and Taylor was sentenced to 151 months of imprisonment and five years of supervised release.  Following the Fair Sentencing Act of 2010 and the corresponding crack-cocaine-guideline amendments implemented by Amendment 750, Taylor moved for a sentence reduction under 18 U.S.C. § 3582(c)(2).  The district court denied Taylor's motion, and Taylor now appeals.  For the reasons that follow, we affirm the district court's order.

## I

Taylor pled guilty to conspiracy to distribute and to possess, with intent to distribute, 392.2 grams of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846.  At the time of Taylor's sentencing in 2004, offenses involving more than 50 grams of crack cocaine carried a statutory minimum penalty of 10 years of imprisonment and, for a defendant who had "a prior conviction for a felony drug offense [that had] become final," the minimum penalty increased to 20 years' imprisonment.  *See* 21 U.S.C. § 841(b)(1)(A) (2004).  The government filed a sentencing enhancement, pursuant to 21 U.S.C. § 851, indicating that Taylor had a prior conviction for a felony drug offense and that he thus was subject to the statutory minimum penalty of 240 months' imprisonment.

In Taylor's plea agreement, the parties agreed that Taylor had a base offense level of 34 and a criminal-history category of VI and that the government would recommend a two-level reduction for acceptance of responsibility.  Accordingly, Taylor

had a final base offense level of 32 and a corresponding guideline range—as determined from the § 5A Sentencing Table—of 210–262 months.[1]  *See* U.S.S.G. § 5A (2004).  The lower limit of this range was increased to 240 months by virtue of the statutory minimum to which Taylor was subject.  *See* U.S.S.G. §§ 1B1.1(h) & 5G1.1(c) (2004).  The government agreed to move for a downward departure based on Taylor's substantial assistance, allowing him to be sentenced below the statutory minimum.  At Taylor's sentencing, the district judge granted the motion for a substantial-assistance departure, but rather than using Taylor's 240-month statutory minimum as the starting point for his downward departure, *cf. United States v. Stewart*, 306 F.3d 295, 332 (6th Cir. 2002) (holding that the statutory mandatory minimum is the appropriate starting point from which to calculate a downward departure for substantial assistance), the district judge simply subtracted an additional three levels from Taylor's base offense level[2]—resulting in a new base offense level of 29 and a guideline range of 151–188 months—and sentenced him to 151 months of imprisonment, the bottom of that range.

Years later, the Fair Sentencing Act of 2010 (FSA) increased the quantity of crack cocaine required to trigger the 20-year statutory minimum to which Taylor was subject from 50 grams to 280 grams.  *See* 21 U.S.C. § 841(b)(1)(A) (2013).  But Taylor's crime involved 392.2 grams of crack cocaine, and thus he would still have been subject to the same statutory minimum even if he had been sentenced after passage of the FSA.  However, the 2011 crack-cocaine guideline amendments, also prompted by the FSA, did lower the § 2D1.1 base offense levels for crack-cocaine offenses and thus also lowered the § 5A guideline range to which Taylor would have been subject *absent the existence of a statutory minimum.*  *See* U.S.S.G. Amend. 750.  Taylor relied on this change in moving to modify his sentence pursuant to 18 U.S.C. § 3582(c).

---

[1] Throughout this opinion, the term "§ 5A guideline range" is used to describe the guideline range derived from the Sentencing Table in § 5A that corresponds to a defendant's base offense level (factoring in any relevant adjustments) and criminal-history category *before* incorporating any relevant statutory minimum.

[2] The use of Taylor's base offense level and corresponding § 5A guideline range—rather than his statutory minimum—as the starting point for calculating his substantial-assistance reduction appears to have occurred at the request of the parties.  In Taylor's plea agreement, the government initially proposed a one-level reduction for substantial assistance.  The district judge then determined, however, that given the extent of Taylor's cooperation, a reduction of three levels was more appropriate.

The district court denied Taylor's request for a sentence reduction, holding that Amendment 750 did not have the effect of lowering Taylor's "applicable guideline range," and Taylor now appeals.

**II**

Normally, this court reviews a district court's denial of a motion to modify a sentence under 18 U.S.C. § 3582(c)(2) for abuse of discretion. *See United States v. Moore*, 582 F.3d 641, 644 (6th Cir. 2009). However, where a district court concludes, as it did here, that it lacks the authority under 18 U.S.C. § 3582(c)(2) to reduce a defendant's sentence, such a conclusion is a question of law that this court reviews de novo. *See United States v. Curry*, 606 F.3d 323, 327 (6th Cir. 2010).

Under 18 U.S.C. § 3582(c)(2), a defendant is eligible for a sentence reduction if: (1) the defendant "has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission"; and (2) such reduction is "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c). We have clarified that to satisfy the second requirement, "a guidelines amendment must 'have the effect of lowering the defendant's applicable guideline range.'" *United States v. Hameed*, 614 F.3d 259, 269 (6th Cir. 2010) (Moore, J.) (quoting U.S.S.G. § 1B1.10(a)(2)(B)); *see also United States v. Pembrook*, 609 F.3d 381, 383 (6th Cir. 2010). Taylor claims that Amendment 750, which lowered the § 2D1.1 base offense levels for crack-cocaine offenses, entitles him to a sentence reduction under § 3582(c). Assuming without deciding that Taylor's sentence was based on § 2D1.1 and thus that he satisfies the first requirement for § 3852(c) sentence-reduction eligibility, Taylor's appeal fails, as Amendment 750 does not have the effect of lowering his "applicable guideline range."

Amendment 759 did, for the first time, provide an express definition for the term "applicable guideline range." It did so by amending Application Note 1(A) to U.S.S.G. § 1B1.10 to read: "applicable guideline range (*i.e.*, the guideline range that corresponds to the offense level and criminal history category determined pursuant to § 1B1.1(a), which is determined before consideration of any departure provision in the Guidelines

Manual or any variance)." U.S.S.G. § 1B1.10 cmt. n.1(A).  In support of his sentence-reduction motion, Taylor argues that this new language indicates that all provisions of § 1B1.1(a) except § 1B1.1(a)(8)—the subsection that specifically incorporates any relevant statutory minimum—should be included in the definition of "applicable guideline range."  As we recently held in *United States v. Joiner*, 727 F.3d 601, 606 (6th Cir. 2013), however, "the Application Note makes clear that the 'applicable guideline range' is the range that results from applying § 1B1.1(a) in its entirety, including incorporation of any relevant statutory minimum."  Thus, Taylor's argument that the Application Note is somehow intended to exclude the portion of § 1B1.1(a) that accounts for his statutory minimum is not well taken.

Thus, employing the definition of "applicable guideline range" adopted in *Joiner*, Amendment 750 does not have the effect of *lowering* Taylor's "applicable guideline range."  At the time of his original sentence and prior to Amendment 750, Taylor had a base offense level of 32 (after a two-level reduction for acceptance of responsibility) and a criminal-history category of VI, corresponding to § 5A guideline range of 210–262 months.  But, as mentioned above, his statutory minimum of 240 months required that his ultimate "applicable guideline range" be 240–262 months.  After calculating this range, the district judge departed below this range based on the government's motion for substantial assistance, sentencing Taylor to 151 months' imprisonment.

After Amendment 750, the base offense level corresponding to the quantity of drugs involved in Taylor's crime would now be 32 (rather than 34), less two levels for acceptance of responsibility. Thus, with a base offense level of 30 and a criminal-history category of VI, Taylor's amended § 5A guideline range would now be 168–210 months. Because his statutory-minimum penalty remains 240 months, however, his "applicable guideline range" is now simply 240 months.

While at first blush, it may seem that Taylor's current "applicable guideline range"—240 months—is *different* than his earlier one, which ranged from 240 to 262 months, for the purposes of Taylor's substantial-assistance departure, his current 240-month "applicable guideline range" is not *lower*.  In *Hameed*, we noted that "the

appropriate starting point for calculating a downward departure under 18 U.S.C. § 3553(e) is the mandatory minimum sentence itself." *Hameed*, 614 F.3d at 268 (internal quotation marks omitted). Thus, in the case of a defendant who received a departure for substantial assistance, a change in the upper bound of his "applicable guideline range" does not *lower* that range for the purpose of his substantial-assistance departure, as the departure should be taken solely from the statutory minimum, i.e., the lower bound that was not reduced.

This is true even when, as was the case at both Hameed's and Taylor's original sentencings, the sentencing judge "accede[s] to the parties' request that he take the base offense level prescribed by § 2D1.1 as his starting point [for a substantial-assistance departure]" rather than the statutory minimum, as "the [§ 5A] guideline range resulting from [the § 2D1.1] base offense level was not 'applicable' because it was not the correct point from which the departure should have been measured." *Ibid*. "Nor were the crack guidelines 'applicable' in determining the extent of the departure[, as] . . . only factors relating to a defendant's cooperation may influence the extent of a departure pursuant to § 3553(e)." *Id*. at 268–69 (internal quotation marks omitted). Thus, a district judge's incorrect choice to start a substantial-assistance departure from the crack-cocaine guidelines rather than the defendant's "applicable guideline range" and, in particular, the statutory minimum that forms the lower bound of the "applicable guideline range," does not change the fact that the "applicable guideline range" has not been lowered for a defendant who was subject to a statutory minimum but received a substantial-assistance departure.

We note that the situation would be different for a defendant who was subject to a statutory minimum but who did *not* receive a downward departure for substantial assistance. For instance, if a defendant had an original "applicable guideline range" of 240–262 months, with the lower, 240-month bound resulting from a statutory minimum, a subsequent amendment that changed his "applicable guideline range" to 240 months, by shifting his amended § 5A guideline range completely below the 240-month minimum, would have the effect of lowering his "applicable guideline range." This is

so because the defendant, who, under his original "applicable guideline range," could possibly have been sentenced to a within-guideline sentence of anywhere from 240 to 262 months, can, at sentence reduction, only receive a "within-guideline" sentence of 240 months. In contradistinction, however, the defendant who received a substantial-assistance departure has already been brought all the way down to the low end of his "applicable guideline range," i.e., the 240-month statutory minimum, from which the judge has then chosen to depart.

There is nothing anomalous or unfair about the "unhelpful" defendant who did not provide substantial assistance being eligible for a sentence reduction and the "helpful" defendant who did assist authorities coming up empty. The "helpful" defendant has, before receiving the substantial-assistance departure itself, also enjoyed the additional benefit of being dropped to the bottom of his "applicable guideline range," i.e., to his statutory minimum, as the starting point for a substantial-assistance departure is the statutory minimum. Without a substantial-assistance motion, this would be the lowest that the "helpful" defendant's sentence could be, whether at his original sentencing or a subsequent sentence-reduction proceeding. In other words, the "helpful" defendant has bottomed out. On the other hand, the "unhelpful" defendant may not yet have bottomed out at his statutory minimum and may be able to do so as a result of subsequent amendments to the guidelines. That the "helpful" and "unhelpful" defendants bottom out at the same point is the intended effect of statutory minimums. And of course, though the two defendants bottom out at the same point, the "helpful" defendant still is rewarded for his assistance by receiving an additional departure below the statutory minimum, which is applied at his original sentencing.

Accordingly, if a defendant received a sentence below his statutory minimum based on his substantial assistance and is still subject to the same statutory minimum that set the floor of his "applicable guideline range" at the time of his original sentencing, it cannot be said that a subsequent amendment to the sentencing guidelines has had the effect of *lowering* his "applicable guideline range." Given that Taylor is subject to the

same statutory minimum sentence as that in effect at the time of his original sentencing, Amendment 750 does not have the effect of lowering his "applicable guideline range."

### III

For the foregoing reasons, we affirm the decision of the district court denying Taylor's motion for a sentence reduction under 18 U.S.C. § 3582(c).

———————————

**DISSENT**

———————————

BERNICE B. DONALD, Circuit Judge, dissenting.  The majority concludes that Taylor's appeal must fail, relying largely on this court's prior decision in *United States v. Hameed*, 614 F.3d 259 (6th Cir. 2010), for the proposition that Amendment 750 of the Sentencing Guidelines does not have the effect of lowering Taylor's "applicable guideline range."  But times have changed since *Hameed*. Amendments 750 and 759 to the Guidelines took effect on November 1, 2011, retroactively lowering the crack-cocaine ranges in Guidelines § 2D1.1 and amending the policy statements.  Under the new policy statements, a statutory minimum must "operate" or be "required" in order to have a role in the "applicable guidelines range."  The new policy statements also expressly authorize re-sentencing below the amended ranges for defendants sentenced pursuant to a substantial-assistance departure under 18 U.S.C. § 3553(e).  Such a departure renders the normal statutory minimums inoperative.  *See* U.S.S.G. §§ 1b1.10(b)(2), 1B1.10, cmt. 3.  Our holding in *Hameed*, which concerned the policy statements applicable to Amendment 706, therefore, is not relevant to the policy statements under Amendment 759.

Neither is the majority's reliance on *United States v. Joiner*, in which a panel of this court recently rejected the notion that a substantial-assistance departure under § 3553(e) prevents an otherwise applicable statutory minimum ever from being incorporated into a defendant's "applicable guidelines range," 727 F.3d 601, 609 (6th Cir. 2013), availing when at least three other circuits have reached the opposite conclusion,[1] and when a judge of this court concluded, within days of *Joiner*, that a

———————————

[1]*See United States v. Wren*, 706 F.3d 861, 863 (7th Cir. 2013) ("[I]f § 5G1.1 did not affect the original calculation, it does not come into play when a court considers the effect of a retroactive change to the Guidelines."); *United States v. Savani*, 733 F.3d 56, 58 (3d Cir. 2013) ("[D]efendants . . . whose original sentences were below the mandatory minimum applicable to them because of substantial assistance to the government, are not barred for policy reasons from seeking a reduction of sentence pursuant to § 3582(c)(2)."); *In re Sealed Case*, 722 F.3d 361, 363 (D.C. Cir. 2013) ("This appeal asks whether a crack offender sentenced below an otherwise applicable statutory minimum because he provided substantial assistance to law enforcement is eligible for a sentence reduction under § 3582(c)(2).  We hold that he is.").

substantial-assistance motion "effectively 'waive[s]' the mandatory minimum and permit[s] the district court to impose a sentence based on the otherwise-applicable guidelines range," *United States v. Doe*, 731 F.3d 518, 528 (6th Cir. 2013) (Cole, J., concurring in part and concurring in the judgment). In the words of Judge Cole, "Without a mandatory minimum at work, nothing prevents Amendment 750 from having 'the effect of lowering' the sentence the [defendant] did receive." *Id.*

Under Amendment 750, re-sentencing for those sentenced below the normal statutory minimum pursuant to a § 3553(e) motion is consistent with the Sentencing Commission's policy statements. Accordingly, I would reverse and remand this matter to the district court so that it may exercise its discretion to determine whether to re-sentence Taylor. I must, therefore, respectfully dissent.

## I.

The question of whether those who received a substantial-assistance departure are eligible for re-sentencing relief under Amendment 750 has troubled and divided the district courts. *See, e.g., United States v. Mont*, No. 4-05-CR-229, Dkt. 77 (N.D. Ohio, Mar. 5, 2012) (granting relief); *United Staes v. Stewart*, No. 3:02-CR-78(3), 2012 U.S. Dist. LEXIS 11316 (E.D. Tenn. Jan. 31, 2012) (granting re-sentencing relief under Amendment 750 to a defendant sentenced below the statutory minimum for substantial assistance); *United States v. Young*, No. 4:06-CR-270, Dkt. 109 (N.D. Ohio, Jan. 24, 2012 (granting relief). *But see, e.g., United States v. Taylor*, No. 4:03-CR-422, Dkt. 78 (N.D. Ohio, May 31, 2012) (denying relief for ineligibility); *United States v. Bell*, No. 4:02-CR-147-JG-1, Dkt. 71 (N.D. Ohio, Apr. 17, 2012) (denying relief for ineligibility). This confusion is understandable because the individuals sentenced in these cases are not similarly situated to other defendants generally. Instead, the law acknowledges the great risk that they face in helping the Government investigate and prosecute their confederates by removing the normal sentencing restrictions.

When the Government files a substantial-assistance motion, it usually enables the sentencing court to do two things, each arising from a different source of authority. *See United States v. Gabbard*, 586 F.3d 1046, 1049-50 (6th Cir. 2009). On motion of

the Government, the court may, under 18 U.S.C. § 3553(e), sentence a defendant below the statutory floor created by the otherwise-applicable statutory minimum. *Id.*; *see also United States v. Williams*, 687 F.3d 283, 287 (6th Cir. 2012) (discussing the authority that Congress gave sentencing courts under § 3553(e) to impose sentences below the normal statutory minimum and the limits of that statutory authority). Under § 5K1.1 of the Guidelines, the Government invites the court to grant a motion permitting a departure from the previously-calculated Guidelines range. *Gabbard*, 586 F.3d at 1049-50. This distinction is important because the Guidelines, which we must interpret for the eligibility question, incorporate the provisions concerning § 3553(e) and § 5K1.1 in different places. For my purposes, the fact that § 3553(e) statutorily renders the normal statutory minimum inoperative is the most relevant aspect of a substantial-assistance motion.[2]

## II.

Section 3582(c)(2) authorizes the district courts to reduce the prison term of a defendant whose original sentence was 1) "based on a sentencing range that has subsequently been lowered by the Sentencing Commission," so long as 2) "such reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2). I consider each in turn.

A.     **Whether Taylor's Sentence was "Based On" a Sentencing Range That Has Been Lowered**

There is no question that the offense levels set in § 2D1.1 have been lowered by Amendment 750. The issue in the first prong is whether Taylor's original sentencing was "based on" a sentencing range produced by reference to § 2D1.1.

---

[2] I also note that although our dicta in *United States v. Stewart* that "the appropriate starting point for the defendant's [§ 3553(e)] downward departure was his mandatory minimum sentence" has caused some confusion, it does not mean that the statutory minimum is somehow incorporated into the Guidelines range through § 5G1.1 when it is not "required." 306 F.3d 295, 332 (6th Cir. 2002). Our holding there merely rejected the appellant's contention that the court was obligated to impose a sentence below the Guidelines range when it had granted a § 3553(e) motion.

We formed the test to answer this question in *Hameed*. 614 F.3d at 262-67. "In determining whether a sentence was 'based on' a subsequently lowered guideline range in a plain-meaning sense of the words, we must consider whether the original sentence was, *in fact*, 'based on' such a range; that is, we look to what the district court *actually said and did* at the original sentencing." *Id.* at 264 (citations and internal quotation marks omitted) (emphasis added). Thus, we held that a defendant who had been sentenced below the normal statutory minimum after the grant a § 3553(e) motion had a sentence that was "based on" the § 2D1.1 range. *Id*. at 264-67. The Supreme Court endorsed our approach in *Freeman v. United States*, concluding that the essential question is whether the original sentence was, *in fact*, 'based on' a Guidelines range that has been lowered.[3] 131 S. Ct. 2685, 2693, 2695-98 (2011). The majority's conclusion that Taylor's sentence was based on the statutory minimum rather than the § 2D1.1 range is a misreading of *Hameed*.

For the first re-sentencing prong, the facts of *Hameed* are nearly indistinguishable from those of the present case.[4] Using the ranges in § 2D1.1(c)(3), the court assigned Taylor a base offense level of 34. It then granted a two-level reduction under § 3E1.1(a) for acceptance of responsibility and a three-level reduction under § 5K1.1 for substantial assistance, arriving at an offense level of 29, making Taylor's advisory Guidelines range 151 to 188 months. The court then considered the § 3553(a) sentencing factors and expressly stated that it was sentencing Taylor at the bottom of the Guidelines range to 151 months. What the court actually did, *in fact*, was base the

---

[3]In *Freeman*, the question was whether a defendant's sentence was "based on" a Guidelines range where the defendant had signed a binding Federal Rule of Criminal Procedure 11(c)(1)(C) agreement ("C agreement"). 131 S.Ct. at 2690. The plurality opinion held that the defendant's sentence was based on the Guidelines because the district court actually relied on it. *Id*. at 2693 (Kennedy, J., plurality opinion). Justice Sotomayor, concurring separately, agreed that the question is how the original sentence was actually calculated, with the only caveat being that when there is a C agreement, the question is whether the C agreement used the Guidelines range to arrive at the agreed-upon sentencing range. *Id*. at 2697-98 (Sotomayor, J., concurring). The difference when there is a C agreement is that the parties agree to a particular sentencing range, and the district court's task is merely to accept or reject the agreement. *Id*. at 2695-96. Either way, the question is essentially the same: whether the original sentence was, *in fact*, 'based on' a Guidelines range that has been lowered. Taylor did not have a C agreement; he pleaded guilty pursuant to a Rule 11(c)(1)(B) agreement.

[4]The main distinguishing feature between *Hameed* and the present case is that *Hameed* addressed re-sentencing pursuant to Amendment 706, while we address it pursuant to Amendment 750. This difference is relevant in the next sub-section, but not here.

sentence on a range that depended on § 2D1.1. Accordingly, the contention that Taylor's sentence was, in fact, based on the statutory minimum is simply incorrect. The sentencing transcript plainly shows that the sentencing court did not consider the statutory minimum, as the sentencing judge herself later acknowledged when declining to exercise discretion to reduce Taylor's sentence under Amendment 706. Taylor's sentence was "based on" a sentencing range produced by reference to § 2D1.1, and Taylor therefore satisfies prong one.

## B.     Whether Re-sentencing is Consistent with Applicable Policy Statements

To determine whether re-sentencing is consistent with the applicable policy statements, a court must look to U.S.S.G. § 1B1.10. At the time that the *Hameed* court reviewed whether re-sentencing pursuant to Amendment 706 was consistent with § 1B1.10, that section contained fewer relevant policy statements and fewer explanations of those statements than it does today.[5] The most relevant policy statement was § 1B1.10(a)(2)(B). Since then, the Sentencing Commission has added, as part of Amendment 759, application notes to § 1B1.10(a)(2)(B), as well as § 1B1.10(b)(2) and its associated application notes.

Section 1B1.10(a)(2)(B) of the Guidelines states that "[a] reduction in the defendant's term of imprisonment is not consistent with this policy statement and therefore is not authorized . . . [if an expressly retroactive] amendment . . . does not have the effect of lowering the defendant's *applicable guideline range*." U.S.S.G. § 1B1.10(a)(2)(B) (emphasis added). In *Hameed*, we had to determine what counted as the defendant's "applicable guidelines range" to know whether it actually had been lowered, but the policy statements provided no further explanation. 614 F.3d at 267. We turned to our somewhat off-point analysis in *Stewart*, in which we rejected a defendant's arguments that the district court was bound to sentence him below the Guidelines range after granting a § 3553(e) motion, noting that the "starting point" for

---

[5]Amendment 706 became effective on May 1, 2008. *Hameed* was issued on July 26, 2010. 614 F.3d 259. Amendments 750 and 759 became effective on November 1, 2011. U.S.S.G., App. C, at 398, 416.

a downward departure was the statutory minimum. *Id*.; *see Stewart*, 306 F.3d at 332. In the absence of anything better to explain the meaning of "applicable," we concluded that *Stewart* meant that Hameed's "applicable guidelines range" did not depend on the now-modified § 2D1.1, even though his sentence was "based on" § 2D1.1, but on the inapplicable statutory minimum. *Hameed*, 614 F.3d at 268-69.

Now, however, the Sentencing Commission has elaborated on the meaning of "applicable guidelines range" in Application Note 1(A) of § 1B1.10, which states in relevant part that re-sentencing is not appropriate under § 1B1.10(a)(2)(B) if a listed amendment

> is applicable to the defendant but the amendment *does not have the effect of lowering the defendant's applicable guidelines range* because of *the operation of* another guideline or statutory provision (e.g., a statutory mandatory minimum term of imprisonment) (i.e., the guideline range that corresponds to the offense level and criminal history category determined pursuant to 1B1.1(a), which is determined before consideration of any departure provision . . .).

(emphasis added). The elaboration is hardly a model of clarity, but it plainly suggests that our reasoning in *Hameed* may not apply to Amendments 750 and 759. First, it indicates that the "applicable guidelines range" is something different from the statutory minimum because a statutory minimum can "operate on" the "applicable guidelines range" to prevent it from being lowered. Second, and more importantly, it is only the "operation of" a statutory minimum or another guideline that may prevent the "applicable guidelines range" from being lowered. Third, the note expressly refers us to the Guidelines range that corresponds to § 1B1.1(a). This clause modifies "another guideline . . . provision," so the range that corresponds to § 1B1.1(a) is something else that could operate to prevent the applicable Guidelines range from being lowered. *See*, *e.g.*, *In re Sanders*, 551 F.3d 397, 400 (6th Cir. 2008) (using the last antecedent rule to interpret a statutory provision).[6]

---

[6] The last antecedent rule also indicates that the clause quoted from Application Note 1(A) of § 1B1.10—"which is determined before consideration of any departure provision"—modifies § 1B1.1(a). This makes sense because it is § 1B1.1(b), not § 1B1.1(a), that incorporates the departure provisions such as § 5K1.1. This is one place where the difference between § 5K1.1 and § 3553(e) becomes relevant.

Let us turn, then, to § 1B1.1(a) to determine how it could operate to prevent the "applicable guidelines range" from being lowered. This provision instructs a court to establish the Guidelines sentence by applying various Guidelines provisions in a particular order, beginning with those in Chapter 2 and proceeding roughly in the order in which they appear in the Guidelines. U.S.S.G. § 1B1.1(a)(1)-(8). Of particular interest is subsection (8), which incorporates Part G of Chapter 5. U.S.S.G. § 1B1.1(a)(8). Section 5G1.1(b) specifies that "[w]here a statutorily *required* minimum sentence is greater than the maximum of the applicable Guidelines range, the statutorily *required* minimum sentence shall be the guidelines sentence." (emphasis added). Thus, if a statutory minimum is *required*, then the range that corresponds to § 1B1.1(a) could operate to prevent the "applicable guidelines range" from being lowered. A statutory minimum is not *required*, however, when the sentencing court has granted a § 3553(e) motion; in that case, it is not incorporated into the § 1B1.1(a) range.

The Seventh Circuit recently came to the same conclusion in *United States v. Wren*, 706 F.3d 861, 862-64 (7th Cir. 2013), determining that § 5G1.1 simply does not apply if a § 3553(e) motion has been granted. *Id*. at 862-64. Writing for the court, Judge Easterbrook surmised that § 1B1.10(a)(2)(B) and Application Note 1 together mean that while the "operation of" a statutory minimum can produce a situation where Amendment 750 would not lower the applicable Guidelines range, a circumstance where the statutory minimum is inoperative does not. *Id*. at 863-64. Accordingly, the court held that defendants who had been sentenced below the normal statutory floor because of their substantial assistance were eligible for re-sentencing pursuant to Amendment 750. *Id*. at 862-64. This holding is somewhat more persuasive in light of the fact that the Seventh Circuit's holding in regard to Amendment 706 was the same as our interpretation under *Hameed. See United States v. Poole*, 550 F.3d 676, 679-80 (7th Cir. 2008). Additionally, our decision in *Stewart*, the sole basis for our decision in *Hameed*, relied in large part on a Seventh Circuit case. *Stewart*, 306 F.3d at 332 (citing *United States*

---

Section 5K1.1 is a departure provision that does not come into effect in § 1B1.1(a). But § 3553(e) renders § 5G1.1(b), which would normally incorporate the statutory minimum, inoperative in § 1B1.1(a). *See Gabbard*, 586 F.3d at 1049-50.

*v. Hayes*, 5 F.3d 292, 293-95, (7th Cir. 1993) (rejecting appellant's claim that a § 3553(e) motion obligated the court to anything other than imposing a sentence below the statutory minimum)).

The Third and D.C. Circuits also have reached this conclusion. *See United States v. Savani*, 733 F.3d 56, 58 (3d Cir. 2013) ("[D]efendants . . . whose original sentences were below the mandatory minimum applicable to them because of substantial assistance to the government, are not barred for policy reasons from seeking a reduction of sentence pursuant to § 3582(c)(2)."); *In re Sealed Case*, 722 F.3d 361, 363 (D.C. Cir. 2013) ("This appeal asks whether a crack offender sentenced below an otherwise applicable statutory minimum because he provided substantial assistance to law enforcement is eligible for a sentence reduction under § 3582(c)(2). We hold that he is."). And so, too, has a judge of this court concluded that a substantial assistance motion "effectively 'waive[s]' the mandatory minimum and permit[s] the district court to impose a sentence based on the otherwise-applicable guidelines range."[7] *United States v. Do*e, 731 F.3d 518, 528 (6th Cir. 2013) (Cole, J., concurring in part and concurring in the judgment). Accordingly, "[w]ithout a mandatory minimum at work, nothing prevents Amendment 750 from having 'the effect of lowering' the sentence the [defendant] did receive." *Id. But see Joiner*, 727 F.3d at 609.

The other relevant addition from Amendment 759 is the new policy statement in § 1B1.10(b)(2)(B), which reads:

> (B) *Exception for Substantial Assistance*.–If the term of imprisonment imposed was less than the term of imprisonment provided by the guideline range applicable to the defendant at the time of sentencing pursuant to a [§ 3553(e) motion], a reduction comparably less than the amended guidelines range determined under [§ 1B1.10(b)(1)] may be appropriate.

(emphasis added).  Application Note 3 of § 1B1.10 further elaborates:

---

[7]Our recent *en banc* decision in *United States v. Blewett*, Nos. 12-5226 / 12-5582, 2013 U.S. App. LEXIS 24018 (6th Cir. Dec. 3, 2013), is not to the contrary.  Neither of the defendants in that case had received a substantial assistance departure under § 3553(e) from the applicable statutory minimum during his original sentencing.  Additionally, *Blewett* is not applicable here because the statutory sentence that would have applied to Taylor absent the substantial assistance departure under § 3553(e) has not changed.

. . . Subsection (b)(2)(B) provides an exception to this limitation, which applies if the term of imprisonment imposed was less than the term of imprisonment provided by the guideline range applicable to the defendant at the time of sentencing pursuant to a government motion to reflect the defendant's substantial assistance to authorities. . . . The provisions authorizing such a government motion are 5K1.1 (Substantial Assistance to Authorities) (authorizing, upon government motion, a downward departure based on the defendant's substantial assistance); *18 U.S.C. 3553(e) (authorizing the court, upon government motion, to impose a sentence below a statutory minimum to reflect the defendant's substantial assistance*); and Fed. R. Crim. P. 35(b) (authorizing the court, upon government motion, to reduce a sentence to reflect the defendant's substantial assistance).

(emphasis added).    In this policy statement, the Sentencing Commission has acknowledged that those who received § 3553(e) relief are differently situated for re-sentencing.  More importantly, it expressly authorizes re-sentencing below the amended ranges for those sentenced pursuant to a § 3553(e) motion.  A § 3553(e) motion's sole function is to render the normal statutory minimum inoperative.  This new provision would have no meaning under our reasoning in *Hameed*, which established that no defendant with an otherwise-applicable statutory minimum is eligible for re-sentencing under Amendment 706.  Our holding in *Hameed*, therefore, is not applicable to the new policy statements under Amendments 750 and 759.  *See*, *e.g.*, *United States v. Coatam*, 245 F.3d 553, 558 (6th Cir. 2001) (applying the rule of surplusage that "discourages courts from adopting a reading of a statute that renders any part of the statute mere surplusage");  *cf. Wren*, 706 F.3d at 863 (noting that § 1B1.10(b)(2)(B) enhances the court's understanding that the statutory minimum does not affect the amended Guidelines range when there has been a § 3553(e) grant); *United States v. Smith*, 501 F. App'x 920, 926 n.6 (11th Cir. 2012) (taking it as a given that re-sentencing under Amendment 750 was appropriate for defendants who received a § 3553(e) grant because § 1B1.10(b)(2)(B) allows a court to grant a "reduction comparably less than the amended guideline range" ).

Because Taylor's "applicable guidelines range" was not affected by the inoperative statutory minimum, we must look to see if it was lowered by an expressly-

retroactive Guidelines amendment. *See* U.S.S.G. § 1B1.10(a)(2)(B). Amendment 759 expressly made Amendment 750 retroactive. Amendment 750 lowered the crack-cocaine ranges in § 2D1.1. Policy Statement § 1B1.1(b)(1) specifies that the court shall substitute only the amended range and "leave all other guidelines application decisions unaffected." The Supreme Court also has instructed us to leave all original sentencing decisions in place, except for the amended provision, even if such decisions were in error. *Dillon v. United States*, 130 S. Ct. 2683, 2691, 2694 (2010). Thus, because the sentencing court did not actually calculate Taylor's sentence starting from the statutory minimum, nor may we for this purpose. *Cf. Wren*, 706 F.3d at 861 (stating that if § 5G1.1 did not affect the original sentence, then it does not affect the new sentence).

Accordingly, the amended § 2D1.1 crack-cocaine ranges would make Taylor's amended base-offense level 32. U.S.S.G. § 2D1.1(c)(4). Keeping everything else the same as his original sentencing calculation, Taylor's criminal history category would be VI, he would receive a two-level reduction for acceptance of responsibility and a three-level § 5K1.1 reduction for substantial assistance, and the court's grant of the § 3553(e) motion would render the statutory minimum inoperative. His advisory Guidelines range would be 130 to 163 months. *See* U.S.S.G. Sentencing Table. This is indeed a lower range than the 151 to 188 months range the sentencing court used. Re-sentencing for Taylor, pursuant to Amendment 750, would be consistent with the Sentencing Commission's policy statements. Accordingly, Taylor should be eligible for re-sentencing.

Such a holding would correct some of the conflicting positions that we have taken in unpublished opinions regarding Amendment 750. *See*, *e.g.*, *United States v. Williams*, 512 F. App'x 594, 600 (6th Cir. 2013) (rejecting the argument that Amendment 750 alters the *Hameed* analysis); *United States v. Daniel*, 508 F. App'x 549, 549-50 (6th Cir. 2012) (per curiam) (rejecting re-sentencing for defendant sentenced below normal statutory floor with no analysis of "applicable guidelines range"); *United States v. Passmore*, 503 F. App'x 340, 341-42 (6th Cir. 2012) (per curiam) (same). *But see United States v. Blackwell*, No. 12-3405 (6th Cir. 2012) (Order) (remanded after the

government agreed that appellant was eligible for re-sentencing where a § 3553(e) grant allowed for sentencing below the normal statutory floor).  It would  fit more easily within the current language and operation of the Guidelines as well as a common sense understanding of the law.  It hardly makes sense to hold a defendant to a statutory minimum on re-sentencing when the same minimum did not operate on his original sentence.  Of course, to the extent the government believes that a further sentence reduction is inappropriate for a particular defendant, it may ask the district court not to exercise its discretion. *See Freeman*, 131 S. Ct at 2698-99 (Sotomayor, J., concurring).

## III.

In light of this reasoning, I believe that the appropriate course of action would be to reverse the district court's ruling that Taylor is ineligible for re-sentencing under § 3582(c)(2) and remand this case so that the district court may exercise the discretion it possesses. Because the majority affirms the district court's ruling, I respectfully dissent.